### COLLYER v. KRAKAUER.

(Supreme Court, Appellate Division, First Department.   December 20, 1907.)

SALES—WHAT CONSTITUTES.

> A delivery of goods to another, who was to sell them on a commission, the proceeds to be credited on notes of the owner held by the one to whom the goods were delivered, was not a sale and delivery of the goods to him, resulting in an obligation to pay therefor.
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 17, 18.]

Appeal from Appellate Term.

Action by Charles S. Collyer, as trustee in bankruptcy of the estate of the Schelling-Krakauer Company, against Abraham P. Krakauer. From a judgment of the Appellate Term, affirming a judgment of the City Court for plaintiff, defendant appeals. Reversed, and a new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Samuel P. Goldman, for appellant.
Joseph Fried, for respondent.

INGRAHAM, J. The plaintiff, as assignee of the corporation, the Schelling-Krakauer Company, sued to recover from the defendant for goods, wares, and merchandise sold by the bankrupt to the defendant. There is no question of an illegal preference; the action being for the sale and delivery of these goods to the defendant. The answer is substantially a general denial.

Upon the trial the plaintiff called the defendant, who testified that he was an incorporator and one of the directors of the bankrupt, which was a corporation organized about May 1, 1903; that he was also agent for the bankrupt in handling its goods; and that he sold his stock in the bankrupt to the other directors. He was then asked whether he purchased from the bankrupt the goods described in the complaint, which he said he did not. He was then asked as to certain testimony that he had given before the referee in bankruptcy, from which it would appear that the defendant admitted receiving from the bankrupt certain goods and merchandise during October, November, and December, 1903, and February, March, April, and May, 1904; that during this period he was selling agent of the corporation, and he received the goods from the company and sold them.

Plaintiff then called the president of the bankrupt, who testified that he was an officer and director of the bankrupt from October, 1903, to May, 1904. He was then asked whether the bankrupt sold merchandise to the defendant in the month of October and in subsequent months, to which the witness replied that the defendant got the merchandise and was selling it on a 10 per cent. commission basis; that the defendant was selling this merchandise for the bankrupt, and it was delivered by the bankrupt to the defendant. On cross-examination he stated that his testimony as to the purchase and sales of the defendant had been learned by him from the books of the company; that he had no knowledge of any of these transactions that he had testified to, except such as he obtained from the books and the merchandise that he delivered himself; that there was an agreement that the bankrupt was to deliver merchandise to the defendant; that the defendant held notes of the bankrupt, and that as the merchandise was delivered to the defendant the bankrupt would take up the notes; that that was true about all the transactions about which he had been questioned; that "the arrangement had with him [the defendant] as to his selling these goods for the company was he was to get 10 per cent. for selling the merchandise. The merchandise he was to sell is the merchandise I have testified to as being sold to him between October, 1903, and May, 1904. These were the only transactions of purchase and sale between the company and Mr. Krakauer during this period. These were all made, as I have testified, in pursuance of the arrangement I have specified." And on redirect examination the witness again stated that the arrangement was that "Mr. Krakauer was to sell the merchandise and he was to get 10 per cent. on selling the merchandise"; that "Mr. Krakauer said we should make a settlement and take up these notes, and give him credit for the notes less the 10 per cent. discount. When he said 'I want to make a settlement,' I said I would take up the notes, and he said he would deliver the notes, which he did. I said: 'I will give you credit for the merchandise that you got from the Schelling-Krakauer Company.' I then took up the notes and gave him credit for the amount of merchandise that he received from the Schelling-Krakauer Company. The merchandise for which I gave him credit is the merchandise about which I have testified on this witness stand."

It is quite evident that this transaction was not a sale and delivery of goods to the defendant, for which the defendant ever became indebted to the bankrupt. It was a transaction by which the bankrupt was to deliver goods to the defendant, who was to sell them upon a 10 per cent. commission, the proceeds to be credited on the notes of the bankrupt held by the defendant. Goods delivered to the defendant under such an agreement was not a sale and delivery of the goods, from which resulted a legal obligation of the defendant to pay, which would have to be thereafter satisfied by payment, which, to be available as a defense, would have to be pleaded; but here, under the very arrangement by which the goods were delivered, the proceeds were to be applied upon the payment of the vendor's notes, which were to be delivered up by the vendee, and which were actually delivered up by the vendee to the vendor. It is quite clear that, as to the purchase

price of goods delivered under such a contract, no obligation to pay ever existed in favor of the vendor which would justify a recovery. All of these facts appeared as part of the plaintiff's case, and established the fact that there was not at the trial, and never had been, any liability of the defendant to the bankrupt upon which an action could be maintained.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

